No. 25-1380

*In the*

# UNITED STATES COURT OF APPEALS
*for the*
# FIRST CIRCUIT

JASON GRANT, ALLISON TAGGART,
LISA PETERSON, AND SAMANTHA LYONS,

*Plaintiffs-Appellants,*

v.

TRIAL COURT OF THE COMMONWEALTH OF
MASSACHUSETTS, BEVERLY J. CANNONE,
GEOFFREY NOBLE, MICHAEL D'ENTREMONT,
AND MICHAEL W. MORRISSEY,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the District of Massachusetts
No. 1:25-cv-10770-MJJ
The Honorable Myong J. Joun*

## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

MARC J. RANDAZZA
JAY M. WOLMAN
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
ecf@randazza.com
Attorneys for Plaintiffs-Appellants.

Plaintiffs-Appellants respectfully move, pursuant to Fed.R.App.P. 8(a), for an injunction pending appeal. Absent injunctive relief, the issues will be moot before this Court has an opportunity to fully review the matter.

## INTRODUCTION

A state court judge issued an order that reaches out from her courthouse, and prohibits Appellants (and all citizens) from demonstrating within a decreed zone of "First Amendment Suspension." That order is a content-based restriction, a prior restraint, and an affront to basic due process—it was issued without authority, jurisdiction, or opportunity to be heard. The District Court denied Appellants' request for injunctive relief. This Motion is brought on an emergency basis, because every day of the First Amendment being unlawfully suppressed is irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable harm"). Opening remarks begin April 21; if emergency relief is not granted, the trial will be over before this appeal is decided. An injunction of that unconstitutional order pending appeal is warranted.

## BACKGROUND AND PROCEDURAL HISTORY

### 1.0  Factual Background

On January 29, 2022, John O'Keefe, a Boston Police Officer, died. Verified Complaint, ECF No. 1, at ¶ 13. On June 9, 2022, Karen Read was indicted for his murder. *Id.* at ¶ 14. Judge Beverly Cannone is presiding over *Commonwealth v.*

*Read,* Case No. 2282CR00017 (hereinafter "*Read* Case"). *Id.* at ¶ 15. A 2024 trial resulted in a mistrial ("first trial"). *Id.* at ¶ 17. A second trial began on April 1, 2025 ("second trial"). *Id.* at ¶ 18.

Prior to the first trial, the Commonwealth moved for a demonstration-free "buffer zone" beyond the grounds of the Norfolk Superior Courthouse. *Id.* at ¶ 19. Some citizens moved to intervene for the purpose of opposing the imposition of the First Amendment-free zone. *Id.* at ¶ 20. Justice Cannone angrily denied intervention, even though the sought-after order would directly affect the intervenors. *Id.* at ¶ 21. Cannone then imposed the zone. ECF No. 1-1.

In advance of the second trial, the Commonwealth again moved for a buffer zone, but with a larger area (encompassing private property and traditional public fora, including public sidewalks and other areas). *Id.* at ¶ 24. True to her established practice, Judge Cannone granted it on March 25, 2025, with no opportunity for affected persons to intervene or be heard. She decreed that a larger buffer zone for the second trial was warranted, and expressly ordered that:

> no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting.

*Id.* at ¶ 25 and ECF No. 1-3 ( "Prior Restraint Order").



Appellants Jason Grant, Allison Taggart, Lisa Peterson, and Samantha Lyons are Massachusetts residents. ECF No. 1 at ¶¶ 1-4. Since November 2024, they have regularly peacefully protested near the courthouse, holding signs criticizing Judge Cannone. *Id.* at ¶ 26. Their demonstrations took place within the buffer zone. *Id.* at ¶ 27. Plaintiff Jason Grant peacefully demonstrated on the sidewalk next to the courthouse holding signs reading "Judge Bev is Conflicted" and "Bev's Court is a Clownshow" regarding and with images of D.A. Morrissey and Judge Cannone. *Id.* at ¶ 28. Their demonstrations were about Judge Cannone and occurred during trials presided over by her. *Id.* at ¶ 29. There were no adverse incidents and no trials were disturbed. *Id.* at ¶ 30. Appellants wish to continue to demonstrate, including criticizing Judge Cannone, off the grounds of the courthouse complex but within the buffer zone. *Id.* at ¶ 31. However, they reasonably fear contempt proceedings,

arrest, and prosecution by Appellees (Judge Cannone, the state and local police, and the DA).  *Id.* at ¶¶ 32-35.

**2.0    Procedural History**

Appellants sued on April 1, 2025.  ECF No. 1.  That same day, they sought a temporary restraining order and a preliminary injunction to enjoin the order facially and its enforcement as applied.  ECF Nos. 2-3.  Further evidence was filed the next day.  ECF Nos. 9-11.  The Commonwealth Appellees opposed on April 4.  ECF Nos. 21-22.  Appellants filed supplemental authority that day as well.  ECF No. 27.  A non-evidentiary hearing on the motion was held on April 4.  ECF Nos. 28 & 31.

The District Court requested additional briefing and such was filed on April 10.  ECF Nos. 35 & 36.  Appellants provided additional evidence and requested judicial notice on April 11, 2025.  ECF No. 37.  The motion for the TRO and preliminary injunction was denied on April 11.[1]  ECF No. 38.

Notice of appeal was filed. ECF No. 45 and Appellants sought an injunction pending appeal in the District Court on April 17.  ECF Nos. 43-44.  It was denied.  ECF No. 46.

---

[1] The order was initially unclear as to whether it denied only a TRO or both the TRO and the preliminary injunction; the District Court thereupon clarified that the Order at ECF No. 38 denied both. (ECF No. 40).

## JURISDICTIONAL STATEMENT

This appeal relates to an interlocutory order refusing an injunction. *See* 28 U.S.C. § 1292(a)(1) (granting jurisdiction). On April 11, 2025, the District Court denied Appellants' motion both for temporary restraining order and preliminary injunction. ECF No. 38. This Court has jurisdiction.

## ARGUMENT

### 1.0    Legal Standard

A party seeking an injunction pending appeal must "make a strong showing [1] that they are likely to succeed on the merits, [2] that they will be irreparably injured absent emergency relief, [3] that the balance of the equities favors them, and [4] that an injunction is in the public interest." *Together Emples. v. Mass. Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021). That standard is met here.

### 2.0    Appellants are Entitled to an Injunction

#### 2.1    Appellants have Standing

When a plaintiff "is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences he … demonstrates constitutional standing." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003). The harm is apparent. Judge Cannone issued an *ultra vires* order banning speech of a certain content on public sidewalks where Appellants have been peacefully demonstrating since November. Verified Complaint at ¶¶ 25-35. Their speech is chilled—they face arrest and prosecution if they continue. Appellants have standing.

## 2.2 Appellants are Likely to Prevail

Judge Cannone violated Appellants' First and Fourteenth Amendment rights to free speech (Count I) and due process (Count II) by issuing an ultra vires order threatening them with arrest if they protest on public sidewalks. Appellants lost their right to protest, without any due process. Appellants have meritorious claims.

## 2.3 Plaintiffs' First Amendment Rights are Violated

The order is a content-based restriction on Appellants' First Amendment rights. "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws abridging the freedom of speech." *Mass. Coal. For the Homeless v. City of Fall River*, 486 Mass. 437, 440 (2020) (*quoting Reed v. Gilbert*, 576 U.S. 155, 163 (2015)) (quotation marks omitted). If such "laws" are prohibited, unlawful decrees issued without due process are doubly prohibited.

Appellants' speech does not within one of the few exceptions for which content-based restrictions on speech are clearly permitted. *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (cleaned up). "Singing . . . whistling, shouting, [and] yelling" are protected by the First Amendment. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 772 (1994). Demonstrating is protected too. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (describing privilege of citizens to assemble, parade, and discuss public questions in streets and parks).

Content-based regulations must fit "a compelling interest and . . . narrow[] tailor[ing] to achieve that interest." *Reed,* 576 U.S. at 155 (*quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Narrow tailoring requires the restriction to be "the least restrictive means among available, effective alternatives." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). Appellees' actions fail.

There is no compelling interest in restricting a citizen from publicly and peacefully demonstrating against a judge. Appellants have not done anything that would arise to "serious evil" that justifies the restrictions imposed by Appellees. *See United States v. Treasury Employees*, 513 U.S. 454, 475 (1995). While Judge Cannone purports to be protecting Ms. Read's right to a fair trial, Read did not seek the prior restraint—the Commonwealth did so. If Appellants' months of demonstrations did not compromise anyone else's right to a fair trial, they will not compromise Ms. Read's.

The District Court erroneously determined that the buffer zone was a content-neutral regulation. ECF No. 38 at 5-6. This is reversible error. Even facially content-neutral regulations are content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, only specific speech is prohibited. Ironically, the District Court cited to *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762

(1994) (ECF No. 38 at 6) when *that* Court specifically admonished against orders of the type Judge Cannone issued—the "drafting of a statute addressed to the general public." The District Court further erred when it asserted that the record did not indicate the buffer zone order had an "effect on some speakers or messages but not others" (ECF No. 38 at 6 quoting *Coakley*, 573 U.S. at 479). The Verified Complaint at ¶ 23 provided record evidence that commercial speech was not restricted in the zone under the first order, and there is nothing to suggest it would not be treated identically under the second (else every business on private property in the zone would have to remove its signage). The only thing prohibited is *specific content*.

The District Court essentially adopted the Massachusetts Supreme Judicial Court determination in *Spicuzza* – **a case where the SJC explicitly refused to consider whether there were First Amendment implications on public sidewalks**. This was in a challenge brought by other citizens to a different buffer zone citing *Ward*. *Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024). The regulation in *Ward* was about volume and expressly had nothing to do with content. In contrast, one must directly look at the content of the speech barred under the first and, now second, Orders from Judge Cannone: an individual may hold up a sign within the Zone that says "Marry Me" or "Buy Gold," but if the sign says "Impeach Judge Cannone" it is barred. There is nothing "incidental" about it—it is expressly aimed at content.

Assuming, *arguendo*, the "buffer zone" is content neutral, such restrictions are subject to intermediate scrutiny, meaning they must be "narrowly tailored to serve a significant government interest, and … leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Again, the District Court committed reversible error adopting *Spicuzza*. ECF No. 36 at 6-9. While a "fair trial" is a significant interest for Ms. Read, she has no record problem with the protesters. Even if she did, the order is not narrowly tailored—Judge Cannone could remedy the issue with jury instructions, or simply asking the local police to enforce noise ordinances.

This is not the first trial with demonstrators outside, yet it's the first known case to ban demonstrators from sidewalks and public spaces and at a sprawling distance greater than that permitted for anti-abortion protesters. *McCullen v. Coakley,* 573 U.S. 464 (2014). The order need not be directed at such a broad amount of speech, including silent protest. To the extent the District Court relied on Judge Cannone's findings, the purported hearsay evidence was never challenged. It's compounding a constitutional violation on top of a constitutional violation. And it does not leave open ample alternative channels—the news media cover the area closest to the courthouse, leaving Plaintiffs unheard. The *Spicuzza* Court asserted it was narrowly tailored because 200 feet is less than the 500 feet the Commonwealth request, but was just plain lazy analysis. 494 Mass. at 1008. If the government

wants a restriction and gets half, that's narrow tailoring? Thirty feet is enough to ensure passage. And, as to the fear of extraneous influence (*id.*), the only evil the restriction seems to cure is *noise.* Curative jury instructions or a "quiet rule" would suffice. While the *Spicuzza* Court asserted there were ample alternative channels, it made this pronouncement in the absence of record evidence and identified none. 494 Mass. at 1008. Again, analysis of no value.

Sidewalks, including around courthouses, are traditional public forums. *Cornelius v. NAACP*, 473 U.S. 788, 817 (1985); *United States v. Grace*, 461 U.S. 171, 177 (1983), quoting *Perry Education Assn. v. Perry Local Educator's Assn.*, 460 U.S. 37, 45 (1983). Public streets and sidewalks, "are presumptively traditional public forums, and the Supreme Court repeatedly reaffirmed their status as places for expressive activity." *Watchtower Bible & Tract Soc'y of N.Y., Inc v. Jesus*, 634 F.3d 3, 11 (1st Cir. 2011). In 2015, Judge O'Toole recognized that *McCullen v. Coakley*, 573 U.S. 464 (2014), precluded establishing even a 35-foot buffer zone relative to *United States v. Tsarnaev*, Case No. 1:13-cr-10200-GAO (D. Mass.). ECF No. 37. And the Moakley Courthouse appropriately had protesters on its sidewalks during the Tsarnaev trial. *Id.* The *Spicuzza* Court expressly avoided reaching the issue of sidewalks, asserting that it did not have a sufficient record. 494 Mass. at 1008. Unlike *Spicuzza*, the record here includes verified statements that the buffer zone includes sidewalks and other traditional public fora.

A narrowly tailored order would have only applied during jury selection, prohibited direct contact with jurors, and ensure unimpeded access for jurors and witnesses to the courthouse. Since Judge Cannone did not endeavor to properly narrow her order, it should be enjoined. Even if it need not be the least restrictive means, it still must be narrow. It is not, and it must be enjoined.

### 2.4    Judge Cannone's Order Constitutes a Prior Restraint

In a footnote, the District Court determined the buffer zone was not a prior restraint because it only relocated the speech. ECF No. 38 at 5 n. 2. This, too, is reversible error. When, as here, a prior restraint impinges upon the right of the public to speak, and forbids pure speech, not speech connected to any conduct, "the presumption of unconstitutionality is virtually insurmountable." *In re Providence Journal Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986). The District Court adopted the *Spicuzza* Court erroneous assertion that the order was not a prior restraint because it viewed the restriction as merely a content neutral time/place/manner restriction. 494 Mass. at 1008. As it is undoubtedly a content-based restriction, this Court should not compound these errors. Notably, "a prior restraint 'freezes' speech before the audience has the opportunity to hear the message." *In re Providence Journal*, *supra* at 1346. Here, although the order does not altogether preclude the speech on the entire planet, the order precludes it from reaching its intended audience: the news media and gallery observing the trial. The prior restraint must be enjoined.

### 2.5 Plaintiffs Deserved Due Process – It Was Denied

It is an affront to due process that a court can deprive hundreds of non-parties of their First Amendment rights without an opportunity to be heard. Judge Cannone had no authority to issue her Prior Restraint Order. She cited to no violation by Appellants (nor anyone else) of any law or rule and she arbitrarily determined that Appellants' speech warranted a prior restraint, measured against no regulation.

Judge Cannone's order was issued without jurisdiction over Plaintiffs, *ex parte,* and without authority. Judge Cannone has no authority outside the courthouse complex, an issue the District Court ignored. That issue, "**where does Judge Cannone derive the power to impact the First Amendment outside her courthouse?**" was clearly raised. *See* ECF No. 3 at 15. The government ignored it, waiving opposition. *See, e.g., Muniz v. Rovira,* 373 F.3d 1, 4 (1st Cir. 2004)*,* quoting *Nat'l Ass'n of Soc. Workers v. Harwood,* 69 F.3d 622, 627 (1st Cir. 1995) (it is "transparently clear that the raise-or-waive rule can neither be ignored nor brushed aside as 'a pettifogging technicality or a trap for the indolent'").

The right to procedural Due Process is a serious thing and required serious analysis. "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." The Massachusetts Constitution also protects procedural due process. *Duarte v. Commissioner of Revenue*, 451 Mass. 399, 412 n.20 (2008) (quoting *Pinnick v. Cleary*, 360 Mass. 1, 14 n.8 (1971)) (holding that "Part II, c. 1,

§ 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution"). A judge can certainly control her own courtroom. She can almost certainly balance the requirements of the Sixth Amendment and the First Amendment in the hallways of the courthouse and on the courthouse steps. However, few analyses of First Amendment violations start with "*what authority did the censor have at all?*" Due process requires a court to have general or specific jurisdiction over a person to avoid "offend[ing] traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations omitted). Similarly, jurisdiction typically does not attach until service of a writ or other process. *Chisholm v. Gilmer*, 299 U.S. 99, 102-103 (1936). As this Court observed:

> a federal court will not impose judgment on a party that is not offered the opportunity to defend itself. *Lambert*, 355 U.S. at 228. The idea that process is not only due but must be duly provided is so "universally prescribed in all systems of law established by civilized countries," *Twining v. New Jersey*, 211 U.S. 78, 111 (1908), that courts have only seldom to remind litigants that such is the case. *See, e.g., Brown v. American Nat. Bank*, 197 F.2d 911, 914 (10th Cir. 1952) ("It is a familiar rule of frequent enunciation that judgment may not be entered with binding effect against one not actually or constructively before the court."); *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 717 (1989) ("Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. . . . Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due

process. Without jurisdiction over the parties, an *in personam* judgment is invalid."); *Demoulas v. Demoulas*, 428 Mass. 555, 591 (1998) ("The judge did not have jurisdiction over nonparties, and we cannot make awards in favor of nonparties. .").

*Wilson v. Town of Mendon*, 2002 U.S. App. LEXIS 4352, *17-19 (1st Cir. Mar. 19, 2002). Here, Appellants were never brought within Judge Cannone's jurisdiction and her order cannot bind them. In fact, there is no reported case in which a judge simply decided that she was the ruler by fiat over any territory, both public and private, and any person outside her courthouse, irrespective of jurisdiction.[2] Does the First Circuit have jurisdiction over nonparties posting signs in the windows of the Envoy Hotel, or over protesters on Seaport Boulevard? If so, the authority for this power that has escaped being enumerated or defined since the foundation of the Republic. It lacks that power and so does Judge Cannone.

Judge Cannone claimed she was protecting Ms. Read's right to a fair trial. Even at face value,[3] no matter how compelling a governmental interest may exist, that does not mysteriously nor spontaneously create new powers where none exist. Perhaps if a government authority *with the authority* over the public sidewalks created a regulation promoting this interest, it might meet the relevant level of

---

[2] To suggest otherwise would mean that Judge Cannone's order is a general warrant that leaves "to the discretion of the executing officials the decision as to which persons should be arrested[,]" an affront to the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 220 (1981).

[3] It strains credulity to believe the prosecution cares more about the 6th Amendment than the defendant.

scrutiny. The Town of Dedham, for example, can lawfully require parade permits. But the Fourteenth Amendment at least requires that the government official, no matter which branch of government she inhabits, have the power to act. A Court has no power to control non-party use of public forums (sidewalks) else such orders would've been commonplace for centuries. Judge Cannone just declared herself ruler over a radius around her courthouse. The District Court failed to even address the lack of authority Judge Cannone commanded over non-parties on traditional public fora and even private property.

Most importantly, no procedures were in place to contest the order. There was no meaningful opportunity to be heard—it was issued on an *ex parte* basis. *Ex parte* communications can "shadow the impartiality, or at least the appearance of impartiality," of a proceeding and "may, in some circumstances, constitute a deprivation of due process of law." *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir. 1976), *cert. denied*, 429 U.S. 858 (1976), *overruled on other grounds by Maine v. Moulton*, 474 U.S. 159 (1985). Here, Judge Cannone only heard from the Commonwealth and gave no opportunity to any potential subject of the order to be heard. In fact, history shows she flatly denies intervention to be heard to those who would be affected. *See* **Exhibit 1**. *Comm v. Read,* Case No. 2282CR0117 (Norfolk, Mass. Apr. 4, 2024). And, as for the individuals who attempted to intervene and oppose the buffer zone order in the first trial, the Massachusetts Supreme Judicial

Court determined that allowing intervention was not something they would consider. *Spicuzza,* 494 Mass. at 1007. The District Court erred when it determined that Judge Cannone's hearing on the motion, where only the Commonwealth was allowed to participate, was sufficient because she marked as an exhibit an unsolicited email from some businesses. ECF No 38 at 9-10. The Fourteenth Amendment weeps at any notion that due process is satisfied by an unsigned, unsworn email of grievances. If so, then all any immigrant caught up in the recent dragnet needs for due process is an email from an anti-immigrant organization calling for their expulsion. *Presto! Instant Due Process! Off to El Salvador with you!* Those affected by the order were entitled to at least be invited to be heard.

Under both the U.S. and Massachusetts Constitutions, the "fundamental requirement of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Duarte,* 451 Mass. at 412 (quotation marks and citation omitted). "[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335

(1976); *see also Aime v. Commonwealth*, 414 Mass. 667, 675 (1993) ("the individual interest at stake must be balanced against the nature of the governmental interest and the risk of an erroneous deprivation of liberty or property under the procedures which the State seeks to use").

Judge Cannone did not provide notice to any of the Plaintiffs regarding her intent to hold a hearing on (a) whether she had the power to decree *anything* over non-parties, (b) whether she had the power to impose a Buffer Zone, (c) where she allegedly obtained that power, and (d) the interests of the protesters. She previously slammed the courthouse door to anyone who wanted to intervene. Instead, she took the word of the Commonwealth, with no adversarial proceeding, and used the hearsay pretext of her hand-selected jury foreman's claims that there was "noise," warranting a wholesale disregard of the First and Fourteenth Amendments. The Constitution might be inconvenient, but that is why it exists.

The order's vagueness further evidences a deprivation of due process. The order, like any regulation, must define the offense with sufficient definiteness so ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A great degree of specificity and clarity of such notice and restriction is required when First Amendment rights are at stake. *Gammoh v. City of La Habra*, 395 F.3d 1114, 1119 (9th Cir. 2005); *Kev, Inc. v. Kitsap County*, 793 F.2d

1053, 1057 (9th Cir. 1986). A regulation is vague if it either fails to place people on notice of exactly which conduct is prohibited, or if the possibility for arbitrary enforcement is present. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Here, there was not even a regulation allegedly violated.

The Order is a vague, unconstitutional regulation. Government regulations which rely on a viewer's subjective interpretation of facts are void for vagueness. *Morales*, 527 U.S. at 56-64 (holding a provision criminalizing loitering, which is defined as "to remain in any one place with no apparent purpose," void for vagueness because the provision was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554-55 (9th Cir. 2004) (holding a statute requiring physicians to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality" void for vagueness because it "subjected physicians to sanctions based not on their own objective behavior, but on the subjective viewpoint of others"). The District Court determined it was not vague because an Appellant would know where and when they can demonstrate. ECF No. 38 at 10. However, the District Court ignored that the order was vague as to what they can say. Here, Plaintiffs have no precise ability to know whether their speech

is prohibited.  Is newsgathering prohibited?  The police think so.[4]  Is quietly walking in the zone with a sticker that says "Free Karen Read" on your jacket prohibited? The police think so.[5]

Judge Cannone, to quash speech she didn't like, decreed that she should not be forced to bear the indignity of people protesting her where she can see or hear them.  She does not have that power, and her attempt to create it offends the Constitution. This Court cannot allow her to usher in a new era of First Amendment jurisprudence – where a judge can simply rule over territory she chooses, without authority, *i.e.* without due process.  If a judge is permitted to isolate herself from criticism, why shouldn't every citizen have the right to declare "I have the right to prohibit any criticism of my actions that I find unwarranted or unpleasant?"

### 2.6    Appellants Have Been Irreparably Harmed[6]

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976). If the plaintiff demonstrates a likelihood of success, they also establish irreparable harm.  *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012).

---

[4] *Derosier, et al. v. Noble, et al.,* Case No. 1:25-cv-10812 (D. Mass. filed Apr. 4, 2025).

[5] *Delgado v. Noble, et al.,* Case No. 1:25-cv-10818 (D. Mass. filed Apr. 4, 2025).

[6] The District Court did not assess the remaining factors once it determined likelihood of success.  ECF No. 38 at 10 n. 3.

### 2.7 The Balance of Equities Tips in Appellants' Favor

When the government restricts First Amendment rights, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) (holding that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech") *citing Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 563 (1975) (Douglas, J., concurring in part). Failing to grant the injunction will continue to deprive Appellants, and the public, of their constitutional rights. Appellees will suffer no harm. An injunction will merely restore the rights guaranteed by the U.S. Constitution.

### 2.8 Injunctive Relief is in the Public Interest

"Protecting rights to free speech is *ipso facto* in the interest of the general public." *Cutting v. City of Portland*, 2014 U.S. Dist. LEXIS 17481, at *36 (D. Me. Feb. 12, 2014) (internal quotation marks omitted), *aff'd*, 802 F.3d 79 (1st Cir. 2015). Members of the public are prohibited from speaking. Further, members of the public have a right to hear Appellants' protests.

### 3.0 No Bond, or at Most, a Minimal Bond, Should Be Required

However, a bond should only be required if the enjoined party will suffer harm from the issuance of the injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). Appellants requests that the injunction issue with no bond.

## CONCLUSION

Since all four factors favor Appellants and the District Court's decision is apt to be reversed on appeal, an injunction pending appeal is necessary to ensure that Appellants' rights are protected.  Else, the *Read* trial will likely end before this appeal is even heard and Appellants will have forever lost the opportunity to peacefully demonstrate.  Thus, this Court should enjoin the state court order and its enforcement pending appeal.

Date: April 18, 2025.

Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (Bar No. 90629)
Jay M. Wolman (Bar No. 1135959)
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
ecf@randazza.com

*Attorneys for Appellant*s

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that:

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 4,971 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: April 18, 2025.                     RANDAZZA LEGAL GROUP, PLLC

                                          /s/ Marc J. Randazza
                                          MARC J. RANDAZZA

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: April 18, 2025.                  RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
MARC J. RANDAZZA

# **Exhibit 1**

Order
*Commonwealth v. Read,*
Case No. 2282CR0117

265

NORFOLK, SS,

SUPERIOR COURT DEPARTMENT
NORFOLK SUPERIOR COURT
DOCKET NO. 2282CR0117

COMMONWEALTH

V.

KAREN READ

## CITIZENS' MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF UPHOLDING AND DEFENDING THE FIRST AMENDMENT BY OPPOSING THE COMMONWEALTH'S MOTION FOR A BUFFER ZONE AND RESTRAINING SIGNS OR CLOTHING THAT EXPRESS A VIEWPOINT ABOUT THE TRIAL

## 1.0    Introduction

Movants Tracey Anne Spicuzza, Lorena Jenkinson, Dana Stewart Leonard, and Paul Cristoforo are a group of concerned free American citizens who will be negatively affected by the relief the Commonwealth seeks and wish to be heard before this Honorable Court renders its decision on that requested relief. The Commonwealth seeks to unconstitutionally infringe upon the right of the people to enjoy their full and robust rights under the First Amendment and Art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution. The Commonwealth's desire to clamp down on criticism and dissent must not be given this Court's imprimatur.

4/4/24

Denied for
reasons stated on the record
B. Cannone

- 1 -