*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# FIRST CIRCUIT

---

JASON GRANT, ALLISON TAGGART,
LISA PETERSON, AND SAMANTHA LYONS,

*Plaintiffs-Appellants,*

v.

TRIAL COURT OF THE COMMONWEALTH OF
MASSACHUSETTS, BEVERLY J. CANNONE,
GEOFFREY NOBLE, MICHAEL D'ENTREMONT,
AND MICHAEL W. MORRISSEY,

*Defendants-Appellees.*

---

*On Appeal from the United States District Court
for the District of Massachusetts
No. 1:25-cv-10770-MJJ
The Honorable Myong J. Joun*

---

## APPELLANTS' OPENING BRIEF

---

Marc J. Randazza
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
ecf@randazza.com

Mark Trammell
CENTER FOR AMERICAN LIBERTY
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................... 1

STATEMENT OF JURISDICTION ......................................................... 2

STATEMENT OF ISSUES ............................................................... 3

STATEMENT OF THE CASE ............................................................. 4

   1.0   FACTUAL BACKGROUND ........................................................ 4

   2.0   PROCEDURAL BACKGROUND .................................................... 8

SUMMARY OF THE ARGUMENT ........................................................... 8

STANDARD OF REVIEW ............................................................... 11

ARGUMENT ......................................................................... 12

   1.0   APPELLANTS HAVE STANDING ................................................ 14

   2.0   PLAINTIFFS' FIRST AMENDMENT RIGHTS ARE VIOLATED ......................... 14

   3.0   JUDGE CANNONE'S ORDER IS A PRIOR RESTRAINT ............................. 23

   4.0   DUE PROCESS WAS DENIED ................................................. 25

   5.0   APPELLANTS HAVE BEEN IRREPARABLY HARMED ............................... 32

   6.0   THE BALANCE OF EQUITIES TIPS IN APPELLANTS' FAVOR ..................... 33

   7.0   INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST ........................... 33

CONCLUSION ....................................................................... 34

# TABLE OF AUTHORITIES

## CASES

*Akebia Therepeutics v. Azar,*
  976 F.3d 86 (1st Cir. 2020) ...................................................................11

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,*
  564 U.S. 721 (2011) ...........................................................................14

*Ashcroft v. Am. Civil Liberties Union,*
  542 U.S. 656 (2004) ...........................................................................14

*Bronco Wine Co. v. Frank A. Logoluso Farms,*
  214 Cal. App. 3d 699 (1989) ..............................................................27

*Brown v. American Nat. Bank,*
  197 F.2d 911 (10th Cir. 1952) ............................................................27

*Bruni v. City of Pittsburgh,*
  824 F.3d 353 (3d Cir. 2016) ...............................................................16

*Butler v. Michigan,*
  352 U.S. 380 (1957) ...........................................................................10

*Casey v. City of Newport,*
  308 F.3d 106 (1st Cir. 2002) ..................................................9, 10, 18

*Chisholm v. Gilmer,*
  299 U.S. 99 (1936) .............................................................................26

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) .............................................................................31

*Commonwealth v. Read,*
  Case No. 2282CR0117 (Norfolk, Mass. Apr. 4, 2024).................4, 5, 29

*Cornelius v. NAACP,*
  473 U.S. 788 (1985) ...........................................................................22

*Cox v. Louisiana,*
  379 U.S. 599 (1965) ...........................................................................19

*Cutting v. City of Portland*,
  2014 U.S. Dist. LEXIS 17481 (D. Me. Feb. 12, 2014)........................................33

*Delgado v. Noble, et al.*,
  Case No. 1:25-cv-10818-RGS (D. Mass.) ......................................................passim

*Demoulas v. Demoulas*,
  428 Mass. 555 (1998)..................................................................................27

*Derosier, et al. v. Noble, et al.*,
  Case No. 1:25-cv-10812-DJC (D. Mass) ........................................................passim

*Duarte v. Commissioner of Revenue*,
  451 Mass. 399 (2008)..................................................................................26

*Firecross Ministries v. Municipality of Ponce*,
  204 F. Supp. 2d 244 (D. P.R. 2002)...............................................................33

*Gammoh v. City of La Habra*,
  395 F.3d 1114 (9th Cir. 2005)......................................................................31

*Grieco v. Meachum*,
  533 F.2d 713 (1st Cir. 1976), *cert. denied*, 429 U.S. 858 (1976) ......................29

*Hodgkins ex rel. Hodgkins v. Peterson*,
  355 F.3d 1048 (7th Cir. 2004)......................................................................21

*In re Providence Journal*,
  820 F.2d 1342 (1st Cir. 1986) .................................................................23, 24

*Int'l Shoe Co. v. State of Wash.*,
  326 U.S. 310 (1945) ...................................................................................26

*Kev, Inc. v. Kitsap County*,
  793 F.2d 1053 (9th Cir. 1986)......................................................................31

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ...................................................................................31

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ...................................................................................15

*Maine v. Moulton*,
   474 U.S. 159 (1985) ........................................................29

*Mangual v. Rotger-Sabat*,
   317 F.3d 45 (1st Cir. 2003) .............................................14

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ........................................................30

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ..................................................passim

*Minn. Voters All. v. Mansky*,
   585 U.S. 1 (2018) ............................................................23

*Muniz v. Rovira*,
   373 F.3d 1 (1st Cir. 2004) ...............................................25

*N.Y. v. Ferber*,
   458 U.S. 747 (1982) ........................................................19

*Nat'l Ass'n of Soc. Workers v. Harwood*,
   69 F.3d 622 (1st Cir. 1995) .............................................26

*Perry Education Assn. v. Perry Local Educator's Assn.*,
   460 U.S. 37 (1983) ..........................................................22

*Pinnick v. Cleary*,
   360 Mass. 1 (1971) ..........................................................26

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................14

*Shuttlesworth v. City of Birmingham*,
   394 U.S. 147 (1969) ........................................................14

*Southeastern Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) ..............................................8, 19, 33

*Spicuzza v. Commonwealth*,
   494 Mass. 1005 (2024) ...............................................passim

*Steagald v. United States*,
    451 U.S. 204 (1981) ........................................................................27

*Sullivan v. City of Augusta*,
    511 F.3d 16 (1st Cir. 2007) .........................................................23

*The Florida Star v. BJF*,
    491 U.S. 524 (1989) ........................................................................19

*The Republican Company v. Appeals Court*,
    442 Mass. 218 (2004)......................................................................29

*Tucson Woman's Clinic v. Eden*,
    379 F.3d 531 (9th Cir. 2004)........................................................31

*Twining v. New Jersey*,
    211 U.S. 78 (1908) ..........................................................................27

*United States v. Grace*,
    461 U.S. 171 (1983) ........................................................................22

*United States v. Tsarnaev*,
    Case No. 1:13-cr-10200-GAO (D. Mass.) ...................................20, 23

*United States v. United States District Court*,
    858 F.2d 534 (9th Cir. 1988).......................................................19

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ...............................................................passim

*Watchtower Bible & Tract Soc'y of N.Y., Inc v. Jesus*,
    634 F.3d 3 (1st Cir. 2011) ............................................................22

*Wilson v. Town of Mendon*,
    2002 U.S. App. LEXIS 4352 (1st Cir. Mar. 19, 2002) .......................27

## STATUTES

28 U.S.C. § 1292 .................................................................................2

G.L. c. 268, § 13C ............................................................................22

La. Rev. Stat. § 14:401 (1962) ..........................................................19

## OTHER AUTHORITIES

Darin Zullo, *Woburn man arrested outside Karen Read trial for filming inside courthouse buffer zone*, BOSTON.COM (Apr. 22, 2025) .........................................11

Flint McColgan, *Karen Read Case Judge Orders 200-foot 'Buffer Zone' During Trial*, Boston Herald (Apr. 4, 2024).......................................................................5

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ............................................................................passim

U.S. Const. amend. VI...........................................................................passim

U.S. Const. amend. XIV.........................................................................passim

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Oral argument has already been scheduled in this matter for May 5, 2025, at 9:30 a.m. The Court was correct in scheduling such argument due to the significant constitutional issues at stake, implicating both free speech and due process.

## STATEMENT OF JURISDICTION

This appeal relates to an interlocutory order denying a request for injunctive relief. *See* 28 U.S.C. § 1292(a)(1) (granting jurisdiction). On April 11, 2025, the District Court denied Appellants' motion both for temporary restraining order and preliminary injunction. ADD001. This Court has jurisdiction.

**STATEMENT OF ISSUES**

1.      Did Judge Cannone have the power to impose a prior restraint over non-parties outside the Norfolk County courthouse or was her declaration of a "Buffer Zone" where the First Amendment was suspended an *ultra vires* act?

2.      If she had that power, did she wield it in violation of the Due Process Clause by depriving non-party citizens outside her jurisdiction of their established right to protest with neither notice nor an opportunity to be heard?

3.      If she had that power, and she exercised it consistent with the Due Process Clause, is the order itself facially unconstitutional as a violation of the First Amendment to the United States Constitution?

4.      If it is not facially unconstitutional, is it unconstitutional as it has been applied, at least partially?

**STATEMENT OF THE CASE**

A Massachusetts Superior Court judge, presiding over a criminal case, issued an order enjoining Appellants and the general public from engaging in First Amendment-protected activities within 200-plus feet of the courthouse during the trial, in a "buffer zone" that includes sidewalks and public spaces that are traditional public forums. The injunction was issued against Appellants and the public without authority, without service of process, and without an opportunity to be heard. Appellants challenged that order and asked the District Court to enjoin it facially, and its as applied enforcement. A preliminary injunction was denied, and this appeal follows.

**1.0    FACTUAL BACKGROUND**

On January 29, 2022, John O'Keefe, a Boston Police Officer, died. AA003 at ¶ 13. On June 9, 2022, Karen Read was indicted for his murder. *Id.* at ¶ 14. Judge Beverly Cannone is presiding over *Commonwealth v. Read,* Case No. 2282CR00017 (hereinafter "*Read* Case"). AA004 at ¶ 15. The initial 2024 trial resulted in a mistrial ("first trial"). *Id.* at ¶ 17. A second trial began on April 1, 2025 ("second trial"). *Id.* at ¶ 18.

Prior to the first trial, the Commonwealth moved for a demonstration-free "buffer zone" beyond the grounds of the Norfolk Superior Courthouse. *Id.* at ¶ 19. Some citizens moved to intervene, against an injunction to be imposed against them,

for the purpose of opposing the creation of a First Amendment-free zone. *Id.* at ¶ 20. Judge Cannone arbitrarily denied intervention, even though the sought-after injunctive order would directly affect the intervenors. *Id.* at ¶ 21; *see also Commonwealth v. Read,* Case No. 2282CR0017 (Norfolk, Mass. Apr. 4, 2024) and Flint McColgan, *Karen Read Case Judge Orders 200-foot 'Buffer Zone' During Trial*, Boston Herald (Apr. 4, 2024).[1] Judge Cannone then imposed the zone as requested by the Commonwealth. AA017.

Prior to the commencement of the second trial, the Commonwealth again moved for a buffer zone. This time, it requested that the zone's injunction encompass a larger area (comprising private property and traditional public forums, including public sidewalks and other areas). AA005 at ¶ 24. The Commonwealth's rationale for requesting this new, expanded buffer zone was that the demonstrators outside could be heard in the courthouse. AA027. The Commonwealth additionally complained that, during the first trial, trial participants and jurors could hear "passenger and commercial vehicles … honk[ing] their horns as a form of demonstration." *Id.* Incredulously, the jurors could not deliberate if forced to endure the sounds of ordinary traffic noise.

---

[1] Available at <https://www.bostonherald.com/2024/04/04/judge-approves-smaller-buffer-zone-around-karen-read-trial/>

True to her established practice, Judge Cannone decreed the zone in existence, issuing her buffer-zone injunction against the public, including Appellants, on March 25, 2025. She provided no opportunity for affected persons enjoined by her order to intervene nor be heard. AA017. She decreed that a larger buffer zone for the second trial was warranted, and expressly ordered that:

> *no individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting.*

AA005 at ¶ 25; AA034 ("Second Prior Restraint Order").



Since November 2024, Appellants Jason Grant, Allison Taggart, Lisa Peterson, and Samantha Lyons have regularly peacefully protested near the

courthouse, holding signs criticizing Judge Cannone. AA006 at ¶ 26. Their demonstrations took place within the buffer zone. *Id.* at ¶ 27. Plaintiff Jason Grant peacefully demonstrated on the sidewalk next to the courthouse holding signs reading "Judge Bev is Conflicted" and "Bev's Court is a Clownshow" with images of D.A. Morrissey and Judge Cannone. *Id.* at ¶ 28. Their demonstrations were about Judge Cannone and occurred during trials taking place in the courthouse. *Id.* at ¶ 29. There were no adverse incidents, and no trials were disturbed, including Ms. Read's. *Id.* at ¶ 30. There is no record of anyone even complaining, much less justifiably complaining.

Appellants wish to continue to demonstrate, including criticizing Judge Cannone, off the grounds of the courthouse complex but within the buffer zone. AA007 at ¶ 31. However, they reasonably fear contempt proceedings, arrest, and prosecution by Appellees (Judge Cannone, the state and local police, and the DA). *Id.* at ¶¶ 32-35. The Massachusetts State Police have used the Zone decree to not only shut down protest, but to harass and threaten journalists and everyday citizens simply trying to walk in the area. *See Derosier, et al. v. Noble, et al.,* Case No. 1:25-cv-10812-DJC (D. Mass) (journalists); *Delgado v. Noble, et al.*, Case No. 1:25-cv-10818-RGS (D. Mass.) (citizens). In fact, it appears a citizen has been arrested merely for filming within the buffer zone. *See* Zullo, *infra*.

## 2.0    PROCEDURAL BACKGROUND

Appellants sued on April 1, 2025.  AA001.  That same day, they sought a temporary restraining order and a preliminary injunction to enjoin the order facially and its enforcement as applied.  AA035-AA057.  Further evidence was filed the next day.  AA060-075.  The Commonwealth Appellees opposed on April 4.  AA076-AA154.  Appellants filed supplemental authority that day as well.  AA155.  A non-evidentiary hearing on the motion was held on April 4.  AA175-AA176.

The District Court requested additional briefing, filed on April 10.  AA177-AA201.  Appellants provided additional evidence and requested judicial notice on April 11, 2025.  AA202.  The motion for the TRO and preliminary injunction was denied on April 11.[2]  ADD001.

Appeal was filed. ADD012. Appellants sought an injunction pending appeal on April 17.  AA217-AA227.  It was denied. AA228.

## SUMMARY OF THE ARGUMENT

"[There] is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559

---

[2] The order was initially unclear as to whether it denied only a TRO or both the TRO and the preliminary injunction; the District Court thereupon clarified that the Order (ADD001) denied both. AA216.

(1975).  In this case, the government seeks to buff out that deep etching, because they (like anyone with any power) prefer to avoid being criticized.

The Commonwealth of Massachusetts, while trying to convict Karen Read of murder, sought a "buffer zone" where protest would be prohibited.  The claimed rationale the government presented when requesting this buffer zone, which Ms. Read did not join, was to protect Karen Read's right to a fair trial.  In other words, the *government* seeks to suppress anti-government protests so that the *accused* can receive a fair trial.

The buffer zone injunction prohibits "demonstrations," which is a content-based restriction.  The buffer zone continues to tolerate commercial speech and permits speech that Judge Cannone does not consider a "demonstration." The government argues that since both pro-government protests and anti-government protests are allowed, that the buffer zone is "content neutral."  This Court needs to educate the government on the difference between "viewpoint based" and "content based" restrictions. That the order granting the buffer zone bans *content*, but is at least playing nice enough to not be *viewpoint* based, does not subject it to a lower level of scrutiny.  Strict scrutiny applies.

But even intermediate scrutiny would fail. There is absolutely no tailoring at all, much less the required narrow tailoring. To have any hope of passing constitutional muster, Judge Cannone was required to consider whether the buffer

zone "sweeps more broadly than necessary to promote the government's interest." *Casey v. City of Newport*, 308 F.3d 106, 114 (1st Cir. 2002). A court cannot make this determination "without some evaluation [in the record] of the alternative measures put in issue by the parties." *Id.* Finally, any restriction chosen by the court "cannot be 'substantially broader than necessary to achieve the government's interest.'" *Id.*, quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989).

Here, Judge Cannone did not consider any alternative measures prior to instituting the buffer zone. The zone simply "burn[s] the house to roast the pig." *Butler v. Michigan*, 352 U.S. 380, 383 (1957). Alternative measures certainly existed, but nobody considered them.

In addition to violating the First Amendment, the buffer zone injunction violates the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause prevents the government from "depriv[ing] any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. But due process cannot exist when a government official, a judge with a duty to uphold the federal and Massachusetts Constitutions, simply decrees a Constitution-free zone, with no power to do so. Even presuming the power existed, it would need to be exercised consistent with the Due Process clause and even then, would be subject to First Amendment scrutiny.

The District Court held that, since the buffer zone was imposed after Judge Cannone reviewed an anonymous email about business-owners' dissatisfaction with protests in a hearing in which Appellants were not able to participate, then Due Process was satisfied. But that was not an opportunity to be heard consistent with the Fourteenth Amendment. Judge Cannone's order was issued without jurisdiction, authority, or opportunity for hearing, utterly failing the due process requirement.

The buffer zone faces facial challenges, but its application is outright street thug fascism. The Massachusetts State Police are presently wielding it to harass journalists and citizens quietly recording video, *Derosier, supra,*[3] and as license to assault those wearing disfavored stickers, *Delgado, supra*. When citizens enter the buffer zone, there should be signs that say "Now Entering Little Pyongyang." This Court needs to restore Constitutional order.

## STANDARD OF REVIEW

Denials of injunctions are reviewed for abuse of discretion, though the Court of Appeals reviews "answers to legal questions *de novo*, factual findings for clear

---

[3] Apparently, on April 22, 2025, a Massachusetts citizen, Bao Nguyen, was arrested merely for "lingering and filing within the buffer zone" according to State Police. Darin Zullo, *Woburn man arrested outside Karen Read trial for filming inside courthouse buffer zone*, BOSTON.COM (Apr. 22, 2025) available at https://www.boston.com/news/local-news/2025/04/22/man-arrested-charged-with-trespassing-filming-karen-read-trial-buffer-zone/

error, and judgment calls with some deference to the District Court's exercise of discretion." *Akebia Therepeutics v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020).

## ARGUMENT

The government's rationale for Judge Cannone's injunction sounds more like a Solzhenitsyn story than something that would be tolerated in the Cradle of Liberty, but here we are. The truth is that the government finds protest inconvenient, and Judge Cannone and the Norfolk County DA chafe at protests that criticize them. They have put up with this core First Amendment speech since November without a single reported disturbance. The Sixth Amendment remained proud and gleaming in every case taking place in the Dedham courthouse through months of peaceful picketing. But *now* that national news cameras showed up, signs that criticize the government must be shooed away. The Sixth Amendment does not need this buffer zone – it has been summoned as a pretext to dishonestly throttle its sister – the First Amendment.

For the sake of argument, let us accept that the Sixth Amendment showed up after being summoned out of some degree of sincerity. Let us imagine that Karen Read asked for protest to be limited, and that there were genuine Sixth Amendment concerns, the buffer zone that has been birthed into existence is still illegitimate. Judge Cannone has no power or jurisdiction over nonparties outside the Courthouse. She has dominion over her courtroom. She may have authority over the entire

courthouse.  She may even be able to dictate what happens on the courthouse steps and the lawn outside.  But she does not have power over anything beyond that.  She does not have inherent dominion over the public sidewalks across the street, down the street, or anywhere else that is not actually courthouse property. And she does not have jurisdiction over non-parties and those otherwise outside her jurisdiction. "The First Amendment has no power here" zone casts its shadow over public sidewalks, private property, and even the public library, if it is strictly enforced.  The District Court disregarded that issue entirely, as if that question was not presented. Yet presented it was, both in writing and in oral argument.  And this question is of the greatest importance.  If Judge Cannone and the Norfolk County DA can conjure up a "First Amendment free zone" then why not every judge in America?  Why not every arbitrator, too, while we're at it?  Lead Counsel for the Appellants serves as a small claims *pro tem* judge from time to time.  Is he also blessed with this power? Can he create such a zone that would follow him around?  Why not?  The same reason that Judge Cannone has no such power:  the Fourteenth Amendment.

As for the purported notice and opportunity, the government's novel "Due Process by proxy" theory will be very interesting indeed going forward, as we confront a legal and governmental ecosystem where Due Process and freedom of speech seem to be in short supply.  Bigots should rejoice, because all they need to do in order to expel every immigrant is to send an anonymous email to every

immigration judge in America voicing their displeasure at immigrants not being expelled fast enough. The District Court's definition of "Due Process" will mean that mass deportations need nothing more than strangers to the cases hit "send" on a fax machine.

## 1.0    Appellants have Standing

When a plaintiff "is chilled from exercising [his] right to free expression or forgoes expression in order to avoid enforcement consequences he … demonstrates constitutional standing." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003). The harm is apparent. Judge Cannone issued an *ultra vires* injunction banning "Demonstrations," and Appellants have been peacefully demonstrating since November. AA005–AA007 at ¶¶ 25-35. They face arrest and prosecution if they continue.

## 2.0    Plaintiffs' First Amendment Rights are Violated

Demonstration is First Amendment protected. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (describing privilege of citizens to assemble, parade, and discuss public questions in streets and parks). Content-based regulations must fit "a compelling interest and . . . narrow[] tailor[ing] to achieve that interest." *Reed v. Town of Gilbert,* 576 U.S. 155 (2015), quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). Narrow tailoring requires the restriction to be "the least restrictive means among available, effective

alternatives." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). Appellees' actions miserably fail this test.

There is no compelling interest in restricting a citizen from publicly and peacefully demonstrating against a judge or a prosecutor or any other government official. Appellants did nothing arising to "serious evil" justifying the restrictions imposed and enforced by Appellees. While Judge Cannone purports to be protecting Ms. Read's right to a fair trial, Read did not seek the prior restraint—the Commonwealth did. Tellingly, Read did not even join the request. If Appellants' months of demonstrations on the sidewalks in Dedham did not compromise anyone else's right to a fair trial, they will not compromise Ms. Read's.

The District Court erroneously determined that the buffer zone was a content-neutral regulation. ADD005-ADD006. This is reversible error. Viewpoint-neutral regulations are content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791. Here, only specific speech is prohibited. Ironically, the District Court cited to *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762 (1994) (ADD006) when *that* Court specifically admonished against orders of the type Judge Cannone issued—the "drafting of a statute addressed to the general public." The District Court further erred when it asserted that the record did not indicate the buffer zone order had an "effect on some speakers or messages but not others" (ADD006, quoting *McCullen v. Coakley*, 573 U.S. 464,

479 (2014)).  AA005 at ¶ 23 provided record evidence that commercial speech was not restricted, else every business on private property in the zone would have to remove its signage.  The only thing that the government requested (and that Judge Cannone prohibited) is *specific content*, specifically criticism that they do not like.

The District Court essentially adopted the Massachusetts Supreme Judicial Court determination in *Spicuzza* – **but the *Spicuzza* case is <u>useless</u> – it is a case where the SJC explicitly refused to consider whether there were First Amendment implications on public sidewalks**.  *Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024).  This was in a challenge brought by other citizens to a different buffer zone citing *Ward.*  But still, the *Spicuzza* court seems to have proudly declared that it would not contemplate the effect of a buffer zone on public sidewalks, pretending it had no idea whether 200-feet outside a courthouse under its superintendence included sidewalks.  *Id*.  Therefore, reliance on *Spicuzza* is like referencing a ghost citation provided by ChatGPT, and everyone should know better.  Moreover, "the constitutionality of buffer zone laws turns on the factual circumstances giving rise to the law in each individual case—the same type of buffer zone may be upheld on one record where it might be struck down on another." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 357 (3d Cir. 2016).  On the record before this Court, which is different than that *Spicuzza* record, the buffer-zone should be struck down.

The regulation imposed in *Ward* was about volume and expressly had nothing to do with content. Given what the government has used to justify this buffer zone injunction, if they were not being disingenuous about the rationale for it, they would have followed *Ward*. The government has provided no real rationale for the buffer zone than a hypothetical concern about noise. Had the government followed *Ward*, we would not be here.[4]

In contrast to *Ward*, one must directly look at the content of the speech barred: an individual may hold up a sign within the Zone that says "Marry Me" or "Buy Gold," but if the sign says, "Impeach Judge Cannone," "Vote for MacLellan/Perkins for Norfolk DA, Vote out Morrissey," or "Free Karen Read," it is barred. There is nothing "incidental" about it—Judge Cannone's orders are expressly aimed at content.[5] In *McCullen v. Coakley*, which otherwise held a 35-foot buffer zone near abortion clinics unconstitutional, the Supreme Court deemed it content-neutral because it was about public safety, access, and sidewalk obstruction; however, the Court highlighted that "the Act would not be content neutral if it were concerned with undesirable effects that arise from the direct impact of speech on its audience

---

[4] Despite the lack of due process and the fact that it is *ultra vires*, the Appellants would not have bothered to sue to have the right to be loud. Of course, the police could also have simply used the disorderly conduct laws to shut down loud protest, but that is not the purpose of the buffer zone. The purpose is to shield the government from criticism unless that criticism is shuffled off out of sight.

[5] Presumably "Karen Read is Guilty" would also be prohibited, but that only saves the buffer zone from being viewpoint-based, which is different from content-based.

or listeners' reactions to speech." 573 U.S. 464, 480-81 (2014) (cleaned-up). In contrast, Judge Cannone's injunction against Appellants and the public is directly addressed to the alleged (but imaginary) undesirable effects that might arise from the direct impact of speech on others. Thus, it is necessarily a content-based, not a content-neutral restriction, subject to strict scrutiny.

Assuming, *arguendo*, the order imposing the current "buffer zone" is content neutral (which Appellants do not concede), such restrictions are subject to intermediate scrutiny, meaning they must be "narrowly tailored to serve a significant government interest, and … leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. A court cannot meet the standard required by intermediate scrutiny without performing some analysis on the record regarding why less restrictive measures could not be adopted. *Casey*, 308 F.3d at 114. Neither Judge Cannone nor the lower court considered *any* alternative measures before creating the buffer zone injunction. The First Amendment doesn't demand the precision of a Milanese dressmaker's artisanal stitching, but it requires more than tossing a poorly fitting muumuu from a thrift store pile over Lady Liberty and calling it "good enough for government work."

Moreover, the District Court committed reversible error adopting *Spicuzza*. AA198-AA201. While a "fair trial" is a significant interest for Ms. Read, she has declared no problem with the protesters, not on the record nor in any known public

comment of any kind. In fact, she did not take any position on the imposition of a buffer zone. *See* AA089 (providing link to video of Judge Cannone's hearing). Even if she did, the order is not narrowly tailored—Judge Cannone could remedy the issue with jury instructions, simply asking the local police to enforce noise ordinances, closing the windows, or simply waiting for noise to occur and then sending officers to punish those who caused it. That is what a free society as discussed in *Conrad* would expect. *Southeastern Prom's v. Conrad*, 420 U.S. at 559.

Appellants do not dispute that there is a legitimate interest in protecting the judicial system from certain external pressures. *Cox v. Louisiana*, 379 U.S. 599, 562 (1965). However, the statute upheld in *Cox* was first of all, not ultra vires. Second, it required the *mens rea* of "intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer[.]" La. Rev. Stat. § 14:401 (1962). Judge Cannone's injunction has no *mens rea* requirement like a proper statute might. It simply imposes strict liability on speech. Speech can never be subject to strict liability. Regulations that create strict liability over speech are invalid. *See, e.g., The Florida Star v. BJF*, 491 U.S. 524, 541 (1989). The Constitution prohibits the "imposition of criminal sanctions on the basis of strict liability where doing so would seriously chill protected speech." *United States v. United States District Court*, 858 F.2d 534, 540 (9th Cir. 1988). Even in the context of the indefensible evil of child pornography, "criminal

responsibility may not be imposed without some element of scienter on the part of the defendant." *N.Y. v. Ferber*, 458 U.S. 747, 765 (1982). Yet here, citizens are off to jail if they even walk through the zone taking video.[6] A strict-liability buffer-zone injunction is wildly unconstitutional.

This is not the first highly publicized trial with demonstrators outside. Even in *United States v. Tsarnaev*, Case No. 1:13-cr-10200-GAO (D. Mass.) where protesters were quite vocally against the defense, far more likely to chafe the Sixth Amendment, Judge O'Toole exercised restraint and recognized the limits of his powers. We should honor his wise decision honoring his oath to the Constitution.

This is the first known case to ban demonstrators from sidewalks and public spaces and at a sprawling distance greater than that permitted for even anti-abortion protesters. *McCullen, supra* (declaring 35-foot buffer zone unconstitutional). The order need not facially sweep up such a broad array of speech, including silent protest. The government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward, supra*, at 799. Restraining silent protest does not advance the purported "noise" goal. This is especially where the alleged noise was not asserted to have affected deliberations. AA125 at ¶ 10 (Affidavit of Juror Doe). And it most certainly should not license the Mass. State Police's use of the zone to harass newsgathering

---

[6] *See supra* n. 3.

and simply "walking with a sticker on one's jacket." *See Derosier, supra,* and *Delgado, supra.*

To the extent the District Court relied on Judge Cannone's findings, the purported hearsay evidence was never challenged, because there was neither notice nor opportunity to be heard. It is compounding a constitutional violation on top of a constitutional violation. And it does not leave open ample alternative channels—the news media cover the area closest to the courthouse, leaving Appellants unheard. One cannot say that there are ample alternative avenues for expression if protesters are simply shuffled away from where the action is. An anti-abortion protester must be allowed to protest near the entrances to clinics, while not impeding access, because that is where the audience is. *McCullen,* 573 U.S. at 488-90 (buffer zone unconstitutionally precluded speakers from identifying and communicating with intended audience). The relationship between public presence and "expressive conduct is intimate and profound." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1059 (7th Cir. 2004). Similarly, here, Appellants should not be relegated to being allowed to speak where their audience is not.

The *Spicuzza* Court asserted the buffer zone was narrowly tailored because 200 feet is less than the 500 feet the Commonwealth requested. That was not a considered analysis. 494 Mass. at 1008. If the government wants an unconstitutional restriction and gets half of what it requested, that is not narrow

tailoring—would 500 feet be "narrow tailoring" if they ask for 1000 feet next time? Thirty feet from the doorway is enough to ensure passage, if passage is a concern. Of course, impeding anyone from accessing the courthouse at all is a violation of an existing statute. So if the alternative means would be to simply use G.L. c. 268, § 13C (prohibiting disruption of court proceedings) then what is the purpose of the buffer zone, but to shuffle anti-government protest far away from where any real audience may be to receive the message the Appellants seek to share?

As to the fear of extraneous influence, the only evil the restriction seems to cure is *noise.* AA087. Curative jury instructions or a "quiet rule" would suffice. While the *Spicuzza* Court asserted there were ample alternative channels, it made this pronouncement in the absence of record evidence and identified none. 494 Mass. at 1008. Again, *Spicuzza* is of no value.

Not only is it a content-based restriction, Judge Cannone's order restricts speech on public sidewalks and spaces, *i.e.* traditional public forums. Sidewalks, including around courthouses, are traditional public forums. *Cornelius v. NAACP*, 473 U.S. 788, 817 (1985); *United States v. Grace*, 461 U.S. 171, 177 (1983), quoting *Perry Education Assn. v. Perry Local Educator's Assn.*, 460 U.S. 37, 45 (1983). Public streets and sidewalks, "are presumptively traditional public forums, and the Supreme Court repeatedly reaffirmed their status as places for expressive activity." *Watchtower Bible & Tract Soc'y of N.Y., Inc v. Jesus*, 634 F.3d 3, 11 (1st Cir. 2011).

"Sidewalk protests… are commonly associated with more particularized dissent. A sidewalk demonstration is often linked to a specific business or institution, focusing attention on what is occurring at that moment at that place[.]" *Sullivan v. City of Augusta*, 511 F.3d 16, 53 (1st Cir. 2007). If Appellants are demonstrating 200+ feet away, they cannot focus attention on what is occurring at the courthouse. And content-based restrictions on political speech in a public forum are subject to 'exacting', or strict, scrutiny. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018).

Again, in 2015, Judge O'Toole recognized that *McCullen* precluded establishing even a 35-foot buffer zone relative to *United States v. Tsarnaev*, Case No. 1:13-cr-10200-GAO (D. Mass.). AA202. And the Moakley Courthouse appropriately had protesters on its sidewalks during that trial. *Id.* The *Spicuzza* Court expressly avoided reaching the issue of sidewalks, asserting that it did not have a sufficient record to determine if sidewalks existed inside the buffer zone. 494 Mass. at 1008. Unlike *Spicuzza*, the record here includes verified statements that the buffer zone includes sidewalks and other traditional public forums. Judge Cannone's buffer-zone injunction lacks any narrow tailoring and it must itself be enjoined.

### 3.0 Judge Cannone's Order Is a Prior Restraint

"[A] prior restraint 'freezes' speech before the audience has the opportunity to hear the message." *In re Providence Journal*, 820 F.2d 1342, 1346 (1st Cir. 1986).

Here, although the order does not altogether preclude Appellants' speech everywhere on Earth, it stops it from reaching its intended audience: the news media and those passing by the courthouse. If protesters want to stand outside an immigration court to support due process, it makes little sense if they are told they cannot do that in front of the court where the proceeding is taking place. If protesters want to protest against maltreatment of animals at a circus, it makes no sense if they are sent to do so far from the tent.

In a footnote, the District Court determined the buffer zone was not a prior restraint because it only relocated Appellants' and others' speech. ADD005 at n. 2. That's the whole point and constitutes reversible error. When, as here, a prior restraint impinges upon the right of the public to speak, and forbids pure speech, not speech connected to any conduct, "the presumption of unconstitutionality is virtually insurmountable." *In re Providence Journal Co.*, *supra* at 1348. The zone shuts down speech in advance of any disturbance or any problems, and with a months-long track record of no such problems existing. All based on what? One anonymous juror from a prior trial claiming that he could "hear" protesters? AA125. With not even the slightest hint that it affected the proceedings? Or the reliance on an unsigned email from business owners that they don't like protesters? AA152. So what? Protesters are not there to be adored by a local shopkeeper, and those businesses have zero to do with the purported (but disingenuous) Sixth Amendment rationale.

The District Court adopted the *Spicuzza* Court's erroneous assertion that a different order on a different record was not a prior restraint because it viewed that particular restriction (a different order on a different record) as merely a content neutral time/place/manner restriction. 494 Mass. at 1008. As it is undoubtedly a content-based restriction, this Court should not affirm and compound the lower court's errors. And in the event that a restriction is at all proper, one does not need to regulate time, place, AND manner when narrowly regulating manner (volume) will suffice.

**4.0     Due Process Was Denied**

It is an affront to due process that a court can deprive hundreds of non-parties of their First Amendment rights with no opportunity to be heard. Judge Cannone had no authority to issue her injunction. She cited to no violation by Appellants (nor anyone else) of any law or rule and she arbitrarily determined that Appellants' speech warranted a prior restraint, measured against no regulation with no mens rea.

Judge Cannone's order was issued *ex parte*, without jurisdiction over Plaintiffs, and without authority. Judge Cannone has no authority to impact the First Amendment outside the courthouse complex, an issue before the District Court that it chose to ignore. *See* AA051. The government also ignored it, waiving any opposition that it might have raised. *See, e.g., Muniz v. Rovira,* 373 F.3d 1, 4 (1st Cir. 2004)*,* quoting *Nat'l Ass'n of Soc. Workers v. Harwood,* 69 F.3d 622, 627 (1st

Cir. 1995) (it is "transparently clear that the raise-or-waive rule can neither be ignored nor brushed aside as 'a pettifogging technicality or a trap for the indolent'").

The Fourteenth Amendment holds that "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." The Massachusetts Constitution also protects procedural due process. *Duarte v. Commissioner of Revenue*, 451 Mass. 399, 412 n.20 (2008) (quoting *Pinnick v. Cleary*, 360 Mass. 1, 14 n.8 (1971)) (holding that "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution"). The right to due process is fundamental and inalienable.

A judge can certainly control her own courtroom. She can almost certainly balance the requirements of the First and Sixth Amendments in the hallways of the courthouse and on the courthouse steps.

Few analyses of First Amendment violations need to start with "*what authority did the censor have at all?*" This one does. Due process requires a court to have general or specific jurisdiction over a person to avoid "offend[ing] traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash*., 326 U.S. 310, 316 (1945) (citations omitted). Similarly, jurisdiction typically does not attach until service of a writ or other process. *Chisholm v. Gilmer*, 299 U.S. 99, 102-103 (1936). As this Court observed:

a federal court will not impose judgment on a party that is not offered the opportunity to defend itself. *Lambert*, 355 U.S. at 228. The idea that process is not only due but must be duly provided is so "universally prescribed in all systems of law established by civilized countries," *Twining v. New Jersey*, 211 U.S. 78, 111 (1908), that courts have only seldom to remind litigants that such is the case. *See, e.g., Brown v. American Nat. Bank*, 197 F.2d 911, 914 (10th Cir. 1952) ("It is a familiar rule of frequent enunciation that judgment may not be entered with binding effect against one not actually or constructively before the court."); *Bronco Wine Co. v. Frank A. Logoluso Farms*, 214 Cal. App. 3d 699, 717 (1989) ("Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. . . . Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due process. Without jurisdiction over the parties, an *in personam* judgment is invalid."); *Demoulas v. Demoulas*, 428 Mass. 555, 591 (1998) ("The judge did not have jurisdiction over nonparties, and we cannot make awards in favor of nonparties. .").

*Wilson v. Town of Mendon*, 2002 U.S. App. LEXIS 4352, *17-19 (1st Cir. Mar. 19, 2002). Here, Appellants were never brought within Judge Cannone's jurisdiction, and her order cannot bind them. In fact, there is no reported case in which a judge simply decided that she was the ruler by fiat over any territory, both public and private, and any person outside her courthouse, irrespective of jurisdiction.[7] Does the First Circuit have jurisdiction over nonparties posting signs in the windows of the Envoy Hotel, or over protesters on Seaport Boulevard? If so, the authority for

---

[7] To suggest otherwise would mean that Judge Cannone's order is a general warrant that leaves "to the discretion of the executing officials the decision as to which persons should be arrested[,]" an affront to the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 220 (1981).

this power that has escaped being enumerated or defined since the foundation of the Republic.  It lacks that power and so does Judge Cannone.

Judge Cannone claimed she was protecting Ms. Read's right to a fair trial. Even at face value,[8] no matter how compelling a governmental interest may exist, that does not  spontaneously create new powers where none exist.  Perhaps if a government authority *with the authority* over the public sidewalks created a regulation promoting this interest, it *might* meet the relevant level of scrutiny if it had the proper mens rea and proper narrow tailoring.  The Town of Dedham, for example, can lawfully require parade permits.  But the Fourteenth Amendment at least requires that the government official, no matter which branch of government she inhabits, have the power to act. A Court has no power to control non-party use of public forums (sidewalks) else such orders would have been commonplace for centuries.  Judge Cannone just declared herself ruler over a radius around her courthouse.  The District Court failed to address the lack of authority Judge Cannone commanded over non-parties on traditional public forums and even private property.

Most importantly, no procedures were in place to contest the order.  There was no meaningful opportunity to be heard—it was issued on an *ex parte* basis. *Ex parte* communications can "shadow the impartiality, or at least the appearance of

---

[8] It strains credulity to believe the prosecution cares more about the 6th Amendment than the defendant.

impartiality," of a proceeding and "may, in some circumstances, constitute a deprivation of due process of law." *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir. 1976), *cert. denied*, 429 U.S. 858 (1976), *overruled on other grounds by Maine v. Moulton*, 474 U.S. 159 (1985). Here, Judge Cannone only heard from the Commonwealth and gave no opportunity to any potential subject of the order to be heard. In fact, history shows she flatly denies intervention to be heard to those who would be affected. *See Comm v. Read,* Case No. 2282CR0117 (Norfolk, Mass. Apr. 4, 2024). And state law bars intervention in criminal cases. *The Republican Company v. Appeals Court,* 442 Mass. 218, 227 n. 14 (2004) (intervention is "a concept foreign to criminal procedure.") Here, the *Spicuzza* case is somewhat instructive - it determined that allowing intervention was not something they would consider. *Spicuzza,* 494 Mass. at 1007. The District Court erred when it mind-bogglingly determined that Judge Cannone's hearing on the motion, where only the Commonwealth was allowed to participate, was sufficient because she marked as an exhibit an unsolicited email from some businesses. ADD009-ADD010. The Fourteenth Amendment weeps at any notion that due process is satisfied by an unsigned, unsworn email of apparent grievances from third parties who are not even addressing the purported Sixth Amendment interest. If so, then all any immigrant caught up in the recent dragnet needs for due process is an email from an anti-

immigrant organization calling for their expulsion.  Those affected by the order were entitled to at least be invited to be heard.

"[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); Judge Cannone did not provide notice to any of the Appellants regarding her intent to hold a hearing on (a) whether she had the power to decree *anything* over non-parties, (b) whether she had the power to impose a Buffer Zone, (c) where she allegedly obtained that power, and (d) the interests of the protesters.  Instead, she slammed the courthouse door on anyone who wanted to intervene, taking the word of the Commonwealth, with no adversarial proceeding, and used the hearsay pretext of her hand-selected jury foreman's claims that there was "noise," warranting a wholesale disregard of the First and Fourteenth Amendments.

The order's vagueness further evidences a deprivation of due process.  The order, like any regulation, must define the offense with sufficient definiteness so ordinary people can understand what conduct is prohibited and in a manner that does

not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A great degree of specificity and clarity of such notice and restriction is required when First Amendment rights are at stake. *Gammoh v. City of La Habra*, 395 F.3d 1114, 1119 (9th Cir. 2005); *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057 (9th Cir. 1986). A regulation is vague if it either fails to place people on notice of exactly which conduct is prohibited, or if the possibility for arbitrary enforcement is present. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Here, there was not even a regulation allegedly violated.

The Order is a vague, unconstitutional regulation. Government regulations which rely on a viewer's subjective interpretation of facts are void for vagueness. *Morales*, 527 U.S. at 56-64 (holding a provision criminalizing loitering, which is defined as "to remain in any one place with no apparent purpose," void for vagueness because the provision was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene"); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554-55 (9th Cir. 2004) (holding a statute requiring physicians to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality" void for vagueness because it "subjected physicians to sanctions based not on their own objective behavior, but on the subjective viewpoint of others"). The District Court determined it was not vague because an Appellant would know where and when they can demonstrate. ADD010.

However, the District Court ignored that the order was vague as to what they can say. Here, Plaintiffs have no precise ability to know whether their speech is prohibited. Is newsgathering prohibited? The police think so.[9] Is quietly walking in the zone with a sticker that says "Free Karen Read" on your jacket prohibited? The police think so.[10] The fact that the Mass. State Police do not have a single officer who understands the Order's language the way the Appellants do suggests that it is confusing and vague.

Judge Cannone decreed that she should not be forced to bear the indignity of people protesting her where she can see or hear them. She does not have that power, and her attempt to create it offends the Constitution. This Court cannot allow her to usher in a new era of First Amendment jurisprudence – where a judge can simply rule over territory she chooses, without authority, *i.e.* without due process. If a judge is permitted to isolate herself from criticism, why shouldn't every citizen have the right to declare "I have the right to prohibit any criticism of my actions that I find unwarranted or unpleasant?"

**5.0    Appellants Have Been Irreparably Harmed[11]**

The "loss of First Amendment freedoms, for even minimal periods of time,

---

[9] *Derosier, et al. v. Noble, et al.,* Case No. 1:25-cv-10812 (D. Mass. filed Apr. 4, 2025).

[10] *Delgado v. Noble, et al.,* Case No. 1:25-cv-10818 (D. Mass. filed Apr. 4, 2025).

[11] The District Court did not assess the remaining factors once it determined likelihood of success. ADD010 at n. 3.

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

## 6.0    The Balance of Equities Tips in Appellants' Favor

When the government restricts First Amendment rights, the balance of hardships weighs in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D. P.R. 2002) (holding that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech"), *citing Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 563 (1975) (Douglas, J., concurring in part). Failing to grant the injunction will continue to deprive Appellants, and the public, of their constitutional rights.  Appellees will suffer no harm.  An injunction will merely restore the rights Appellants are guaranteed by the U.S. Constitution.

## 7.0    Injunctive Relief is in the Public Interest

"Protecting rights to free speech is *ipso facto* in the interest of the general public." *Cutting v. City of Portland*, 2014 U.S. Dist. LEXIS 17481, at *36 (D. Me. Feb. 12, 2014) (internal quotation marks omitted), *aff'd*, 802 F.3d 79 (1st Cir. 2015). Members of the public are prohibited from speaking.  The *Derosier* and *Delgado* plaintiffs have had their rights abridged and Mr. Nguyen was arrested and charged. Further, members of the public have a right to hear Appellants' protests.  Thus, the public interest favors enjoining Judge Cannone's order.

## CONCLUSION

The Court should reverse the denial of the preliminary injunction and remand for the entry of such and for further proceedings.

Date: April 24, 2025.

Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (Bar No. 90629)
Jay M. Wolman (Bar No. 1135959)
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
ecf@randazza.com

Mark Trammell
CENTER FOR AMERICAN LIBERTY
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Appellants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 7,437 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: April 24, 2025.

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
MARC J. RANDAZZA

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: April 24, 2025.                    RANDAZZA LEGAL GROUP, PLLC

                                          /s/ Marc J. Randazza
                                          MARC J. RANDAZZA

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Document Description**       **Pages**

Memorandum and Order on Plaintiffs' Motion for      ADD001 – Temporary Restraining Order, Dkt. No. 38 (Apr. 11, 2025)  ADD011

Notice of Appeal, Dkt. No. 45 (Apr. 17, 2025)     ADD012 – ADD013

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 25-10770-MJJ |
| TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police, MICHAEL d'ENTREMONT, in his official capacity as Chief of Police Department of the Twon of Dedham, Massachusetts, and MICHAEL W. MORRISEY, in his official Capacity as the Norfolk County District Attorney, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

April 11, 2025

JOUN, D.J.

On April 1, 2025, four Massachusetts residents, Jason Grant, Allison Taggart, Lisa

Peterson, and Samantha Lyons (collectively, "Plaintiffs") filed suit against defendants Trial

Court of the Commonwealth of Massachusetts; Beverly J. Cannone, in her official capacity as

Justice of the Superior Court ("Judge Cannone"); Geoffrey Noble, as Superintendent of the

1

Massachusetts State Police; Michael d'Entremont, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts; and Michael W. Morrissey, in his official capacity as the Norfolk County District Attorney (collectively, "Defendants"). [Doc. No. 1]. Plaintiffs allege that Judge Cannone issued a buffer-zone order imposing unconstitutional prior restraint and infringing on their First Amendment and Due Process rights.

Plaintiffs filed a Motion for Temporary Restraining Order, [Doc. No. 2], seeking enjoinment of Judge Cannone's March 25, 2025, order. A hearing was held on April 4, 2025, at 2:30 P.M. The parties completed briefing on April 10, 2025. [Doc. Nos. 35, 36]. Upon consideration of the parties' briefs and supporting evidence, the parties' oral argument, and for the reasons explained below, I <u>DENY</u> Plaintiffs' Motion.

## I.    DISTRICT COURT JURISDICTION

To begin, I am reluctant to chime in on matters within the state court's interests. There are limits to federal jurisdiction as outlined variously in the Anti-Injunction Act, the *Younger* abstention doctrine, and the *Rooker-Feldman* doctrine. *Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). At the hearing, counsel for Defendants acknowledged these doctrines may or may not be applicable, while Plaintiffs disputed their applicability to the case at hand. Subsequently, I gave the parties an opportunity to brief these issues.

My review of the doctrines suggests that none of them are applicable under the facts and circumstances of this case, principally because the Plaintiffs are strangers to the state proceeding. However, I recognize that the Supreme Court has held "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel

2

judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11–12 n. 9 (1987). Without

deciding this jurisdictional tension, I proceed to address the merits of the Plaintiffs' claims.

## II.    TEMPORARY RESTRAINING ORDER

The standard for issuing a TRO—an "extraordinary and drastic remedy"—is "the same as

for a preliminary injunction." *Orkin v. Albert*, 557 F. Supp. 3d 252, 256 (D. Mass. 2021)

(cleaned up). Plaintiffs must show that weighing the following four interests favors granting a

TRO:

> (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that,
> without an injunction, the movant will suffer irreparable harm; (iii) the balance of
> relevant hardships as between the parties; and (iv) the effect of the court's ruling on
> the public interest.

*Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009).

### A.    <u>Likelihood of Success</u>

I begin with the likelihood of success on the merits, which is considered the most

important of the four elements and the "sine qua non" of the calculus. *Ryan v. U.S. Immigr. &*

*Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). Plaintiffs allege that their First Amendment rights

were violated by Judge Cannone's second buffer-zone order (the "Second Order") because it is

content-based, not narrowly tailored, and constitutes prior restraint. Plaintiffs further argue that

the Second Order was issued without a meaningful opportunity to be heard and constitutes a

vague unconstitutional regulation. In contrast, Defendants argue that the buffer zone created by

the Second Order is a content neutral, time, place and manner regulation, narrowly tailored to

serve a significant state interest, and that Plaintiffs' Due Process claim is based on the flawed

premise that they were not granted an opportunity to be heard. Based on the evidence before me

now, I find that Plaintiffs have not demonstrated a likelihood of success on the merits of their

First Amendment and Due Process claims.

**ADD003**

1. **First Amendment Claim**

In relevant part, the Second Order states:

> [N]o individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. The buffer zone shall further be extended to include the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street. Individuals are also prohibited from using audio enhancing devices while protesting.

[Doc. No. 1-4 at 4]. The Second Order is almost identical to Judge Cannone's April 4, 2024, order establishing a buffer zone during the first state-court trial in *Commonwealth v. Karen Read*, 2282-cr-00117 (Mass. Sup. Ct.) (the "First Order").[1] In that case, the Massachusetts Supreme Judicial Court ("SJC") held "the trial judge struck a balance between the right to protest or demonstrate and the defendant's right to a fair trial." *Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008 (2024). I agree with the SJC's reasoning and find that Plaintiffs have not demonstrated a likelihood of success on the merits on their First Amendment claim, even despite the extension of the First Order to the area bounded by Bates Court, Bullard Street, Ames Street, and Court Street (the "Extension").

a. **Constitutional Standard**

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citing U.S. Const., Amdt. 1). The Supreme Court, however, has "regularly rejected the assertion that people who wish 'to propagandize protests or views have a

---

[1] In relevant part, the First Order states, "[N]o individual may demonstrate in any manner, including carrying signs or placards, within 200 feet of the courthouse complex during trial of this case, unless otherwise ordered by this Court. This complex includes the Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry of Deeds building. Individuals are also prohibited from using audio enhancing devices while protesting." [Doc. No. 1-2 at 3].

**ADD004**

constitutional right to do so whenever and however and wherever they please.'" *United States v. Grace*, 461 U.S. 171, 177–78 (1983). "In a traditional or designated public forum, content-neutral restrictions on the time, place, and manner of expression must be narrowly tailored to serve some substantial governmental interest, and must leave open adequate alternative channels of communication." *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 20 (1st Cir. 2002). If the restriction is not content neutral then it "must satisfy strict scrutiny—that is, it must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

### b.  <u>Content Neutrality</u>

The parties do not dispute that the speech at issue is protected by the First Amendment and that the location at issue is a traditional or designated public forum. Instead, they dispute whether the Second Order is content neutral.

Here, the Second Order bars all demonstrations within 200 feet of the courthouse and within the Extension regardless of the subject matter of the demonstration; it "does not draw content-based distinctions on its face." *Coakley*, 573 U.S. at 479. To determine whether a violation of the Second Order has occurred, one need not examine the message conveyed. *Id.* (cleaned up). Rather, "[w]hether [Plaintiffs] violate [the Second Order] 'depends' not 'on what they say,' but simply on where they say it." *Id.* (cleaned up). Significantly, "[a]ny protest against the defendant, and in support of the Commonwealth, would be equally subject to the restrictions of the buffer zone." *Spicuzza*, 494 Mass. at 1008.[2]

---

[2] Plaintiffs are similarly unlikely to succeed in their assertion that the Second Order constitutes prior restraint. I agree with the SJC that there is no prior restraint where "the buffer zone order does not forbid protestors and demonstrators from expressing their chosen message; they simply must do so outside the buffer zone." *Spicuzza*, 494 Mass. at 1008. Similarly, the Second Order does not forbid speech activities, but rather limits where the speech can occur, and thus does not constitute prior restraint. *See Madsen v.*

**ADD005**

Plaintiffs argue that the Second Order is not content neutral because it specifically prohibits demonstrations; it does not prohibit commercial or other types of speech. Here,

> [t]o accept [Plaintiffs'] claim would be to classify virtually every injunction as content or viewpoint based. An injunction, by its very nature, applies only to a particular group (or individuals) and regulates the activities, and perhaps the speech, of that group. It does so, however, because of the group's past actions in the context of a specific dispute between real parties. The parties seeking the injunction assert a violation of their rights; the court hearing the action is charged with fashioning a remedy for a specific deprivation, not with the drafting of a statute addressed to the general public.

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762 (1994). Furthermore, nothing in the record indicates that the Second Order has an "incidental effect on some speakers or messages but not others," and even if it did, such effect does not render the Second Order content based. *See Coakley*, 573 U.S. at 479. Thus, I find Plaintiffs are unlikely to succeed on their claim that the Second Order is content based.

### c.  <u>Narrowly Tailored to Serve a Significant Government Interest</u>

"Even though the [Second Order] is content neutral, it still must be narrowly tailored to serve a significant governmental interest." *Coakley*, 573 U.S. at 486 (cleaned up). "For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* (cleaned up).

As stated previously, the Second Order encompasses the area established in the First Order. Here, the trial judge reinstated the buffer zone in that area for the same reasons as the first trial. [Doc. No. 1-4 at 2 ("For the same reasons that compelled the Court to establish a buffer zone for the first trial, it is necessary to establish a buffer zone for the second trial to ensure the

---

*Women's Health Ctr., Inc.*, 512 U.S. 753, 763 n.2 (1994) (finding no prior restraint where petitioners were "not prevented from expressing their message in any one of several different ways; they are simply prohibited from expressing it within the 36–foot buffer zone.").

**ADD006**

defendant's right to a fair trial.")]. I agree with the SJC's reasoning that the original buffer zone

area passes constitutional muster.

> The buffer zone [] will help ensure a fair trial—a significant governmental interest—by physically clearing the path for jurors, witnesses, and other individuals to come and go from the court house complex without obstruction or interference by protestors or demonstrators, and any concomitant intimidation or harassment, within 200 feet of the court house complex. The buffer zone also helps protect the jurors, who, as the trial judge noted, must remain fair and unbiased, from extraneous influence that might result from, for example, viewing pictures of putative evidence directly in their path. The buffer zone does not preclude the petitioners, or anyone else, from engaging in the same forms of protest they have previously done; it simply constrains them from doing so within a limited zone tied to court house property. In so doing, it leaves open ample alternative channels for communication of the information.

*Spicuzza*, 494 Mass. at 1008.

Additionally, the Extension does not "burden substantially more speech than is necessary

to further the government's legitimate interest[]"—the defendant's right to a fair trial. *Coakley*,

573 U.S. at 486 (cleaned up); *see also Cox v. State of La.*, 379 U.S. 559, 562 (1965) ("[a] State

has a legitimate interest in protecting its judicial system from the pressures which picketing near

a courthouse may create," and "it is of the utmost importance that the administration of justice be

absolutely fair and orderly."). Judge Cannone found that, during the first trial, the "collective

voices of groups of demonstrators gathering outside the buffer zone" and vehicles honking their

horns in response to demonstrators "could be clearly heard inside the courthouse" *despite the*

*original 200-foot buffer zone*. [Doc. No. 1-4 at 3]. An anonymous juror from the first trial

detailed how they "could hear protesters outside screaming and yelling" from the deliberation

room during the first trial. [Doc. No. 22 at 31, ¶ 10]. Where there are groups protesting in front

of the courthouse that can be heard in the courtroom, such actions "may be presumed to intend to

influence judges, jurors, witnesses, or court officials." *See Cox*, 379 U.S. at 567.

**ADD007**

According to an affidavit by Massachusetts State Police Sergeant, Michael W. Hardman, the original buffer zone was sufficient to prevent disturbances from the southern, eastern, and northern sides of the courthouse; however, significant noise and honking originated from the western side of the courthouse, which has larger, open spaces. [Doc. No. 22 at 25–26, ¶¶ 3–4]. Such honking was in response to signs and gestures from demonstrators. [*Id.* at 27, ¶ 6]. As a result, the trial judge expanded the buffer zone to directly include those specific areas west of the courthouse. In other words, the Extension directly advanced the goal of ensuring a fair trial. That the Second Order is in effect during a limited time frame—the course of the criminal trial—demonstrates narrow tailoring. Significantly, Plaintiffs may still engage in the same forms of protest outside the buffer zone. In sum, the Extension is limited in scope and time, clearly tailored "to ensure the defendant's right to a fair trial," [Doc. No. 1-4 at 2], and continues to "leave[] open ample alternative channels for communication of the information." *Spicuzza*, 494 Mass. at 1008. Such safeguards are "necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence." *Cox*, 379 U.S. at 562.

Plaintiffs argue that the Second Order was not sufficiently narrowly tailored. For example, Plaintiffs argue that any restrictions on demonstrations should only be during jury selection, jurors could be brought through alternate entrances, and where there may be reasonable buffer zones enacted, demonstrators could be asked to turn away from a juror or witness until that person enters the courthouse. Contrary to Plaintiffs' assertion, the Second Order "need not be the least restrictive or least intrusive means of serving the government's interests," especially here, where the Extension served the legitimate interest of ensuring a fair trial. *Coakley*, 573 U.S. at 486 (cleaned up).

**ADD008**

Thus, because the Second Order is content neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels for communication, Plaintiffs have not demonstrated a likelihood of success on the merits of their First Amendment claim.

### 2. **Due Process Claim**

"At a minimum, due process requires that a party be given adequate notice that its conduct will be the subject of a binding judicial determination and that it be afforded an opportunity to be heard." *Wilson v. Town of Mendon*, 2002 U.S. App. LEXIS 4352, *17-19 (1st Cir. Mar. 19, 2002) (citing *Lambert v. California*, 355 U.S. 225, 228 (1957)).

Here, Plaintiffs argue they were not provided a meaningful opportunity to be heard, but do not point to any facts to support their assertion. Rather, the record indicates that the trial judge heard from the community regarding the Commonwealth's motion for a buffer zone and that local merchants made requests specifically pertaining to that motion. [Doc. No. 21 at 16 n. 43]. Such opportunity to be heard is further affirmed by the Second Order, which indicates the trial judge recognized "the list of concerns sent to the Court by the 'Karen Read Trial Prepare Together Group' – a group of local business owners and organizations that experienced issues with protestors during the first trial." [Doc. No. 1-4 at 3]. Significantly, there is nothing in the record to indicate that the trial judge restricted the Plaintiffs from voicing their opinions prior to the issuance of the Second Order. Thus, Plaintiffs have not shown a likelihood of success on their claim that there were no procedures in place to provide those impacted by the Second Order with an opportunity to contest it. *See Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 354 (1st Cir. 2004**)** (Where Plaintiff made no effort to apply the three-part analysis outlined

**ADD009**

in *Mathews v. Eldridge*, 424 U.S. 319, 335, (1976), and where quantum of process required

depends on such analysis, the court refused to do Plaintiff's "homework for it.").

Plaintiffs also argue that the Second Order is a vague unconstitutional regulation. "It is

established that a law fails to meet the requirements of the Due Process Clause if it is so vague

and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." *City of*

*Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399,

402–403 (1966)). Here, in relevant part, the Second Order identifies the action prohibited with

specific examples—"no individual may demonstrate in any manner, including carrying signs or

placards." [Doc. No. 1-4 at 4]. The Second Order clearly identifies the area where protesters are

prohibited from demonstrating—"within 200 feet of the courthouse complex, including the

Norfolk Superior courthouse building and the parking area behind the Norfolk County Registry

of Deeds building"—as well as the zone of the Extension—"the area bounded by Bates Court,

Bullard Street, Ames Street, and Court Street." [*Id.*]. Finally, the Second Order specifies how

long it will be in effect—"during trial of this case." [*Id.*]. Thus, "it is clear what the [Second

Order] as a whole prohibits." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (cleaned up).

"[S]peculation about possible vagueness in hypothetical situations not before the Court will not

support a facial attack on a[n] [order] when it is surely valid in the vast majority of its intended

applications." *Id.* (cleaned up).[3]

---

[3] I need not reach the remaining factors—irreparable harm, balance of the equities, and public interest—
where Plaintiffs cannot demonstrate likelihood of success on the merits. *See New Comm. Wireless Servs.,*
*Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st. Cir. 2002) ("The sine qua non of this four-part inquiry is
likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in
his quest, the remaining factors become matters of idle curiosity"); *Wine & Spirits Retailers, Inc. v. Rhode*
*Island*, 418 F.3d 36, 54 (1st Cir. 2005) ("[Plaintiff] has not shown that it is likely to succeed on the merits
of any of its claims. Since such a showing is a precondition to the securing of a preliminary
injunction, . . . we need not probe the other components of the applicable four-part test.").

**III.     CONCLUSION**

For the reasons stated above, Plaintiff States' Motion for Temporary Restraining Order,

[Doc. No. 2], is <u>DENIED</u>.


SO ORDERED.

<u>/s/ Myong J. Joun_____</u>
United States District Judge

**ADD011**

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON GRANT, ALLISON TAGGART, LISA PETERSON, and SAMANTHA LYONS,<br><br>Plaintiffs,<br><br>v.<br><br>TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE, in her official capacity as Justice of the Superior Court, GEOFFREY NOBLE, as Superintendent of the Massachusetts State Police; MICHAEL d'ENTREMONT, in his official capacity as Chief of the Police Department of the Town of Dedham, Massachusetts, and MICHAEL W. MORRISSEY, in his official capacity as the Norfolk County District Attorney,<br><br>Defendants. | Civil Action No. 1:25-cv-10770-MJJ |

## <u>NOTICE OF APPEAL</u>

Plaintiffs, Jason Grant, Allison Taggart, Lisa Peterson, and Samantha Lyons ("Plaintiffs"), hereby give notice that they appeal to the United States Court of Appeals for the First Circuit from the Order (ECF No. 38) dated April 11, 2025.

Dated: April 17, 2025.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
Jay M. Wolman, BBO# 666053
jmw@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Mark. Trammell
(*Pro Hac Vice*)
Center for American Liberty
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Plaintiffs.*

**ADD012**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 17, 2025 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

**ADD013**